**BAKER & HOSTETLER LLP**
Daniel F. Lula, Esq. (SBN 227295)
    Email: dlula@bakerlaw.com
600 Anton Boulevard, Suite 900
Costa Mesa, CA 92626-7221
Tel:   (714) 754-6600
Fax:   (714) 754-6611

**BAKER & HOSTETLER LLP**
Kerri H. Sakaue, Esq. (SBN 301043)
    Email:  ksakaue@bakerlaw.com
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Tel:   (310) 820-8800
Fax:   (310) 820-8859

Attorneys for Defendant
PERATON INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELDONNA GILLESPIE, an individual. | CASE NO. |
| Plaintiff, | [San Bernardino County Superior Court Case No. CIVSB2123826] |
| v. | **NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** |
| CENTERRA SERVICES INTERNATIONAL, INC., a Delaware corporation; CONSTELLIS INTEGRATED RISK MANAGEMENT SERVICES, INC., a Delaware corporation; PERATON, INC., a Maryland corporation; VEANTEA BURNSIDE, an individual; and DOES 1-99, inclusive, | Complaint Filed:     August 16, 2021<br>Complaint Served:   November 5, 2021 |
| Defendants. | |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant PERATON INC. ("Defendant" or "Peraton"), by and through its counsel, hereby removes the above-entitled action from the Superior Court of the State of California in and for the County of San Bernardino (the "State Court"), in which the action is currently pending, to the United States District Court for the Central District of California on the grounds that this Court has jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 and all other applicable bases for removal. In support of this Notice of Removal, Defendant avers as follows:

**PLEADING AND PROCEDURES**

1.   On August 16, 2021, Plaintiff Eldonna Gillespie ("Plaintiff") filed an unverified Unlimited Complaint for Damages (the "Complaint") in State Court commencing this civil action against Defendant in a case styled *Eldonna Gillespie, an individual v. Centerra Services International, Inc., a Delaware corporation; Constellis Integrated Risk Management Services, Inc., a Delaware corporation; Peraton, Inc., a Maryland corporation; Veantea Burnside, an individual; and Does 1-99, inclusive*, Case No. CIVSB2123826 (the "State Court Action").  A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2.   On November 5, 2021, Defendant's registered agent for service of process was personally served with the Complaint in the State Court Action and the following documents:

           **Exhibit B**:  Summons

           **Exhibit C**:  Certificate of Assignment

           **Exhibit D**:  Civil Case Cover Sheet

           **Exhibit E**:  Notice of Posting Jury Fees

           **Exhibit F**:  Notice of Trial Setting Conference and Notice of Case Assignment

1

4883-9404-6980.2

3.   Defendant is informed and believes that the following additional document is also on file in the State Court Action, a true and correct copy of which is attached as the Exhibit identified below:

**Exhibit G**:   Notice of Return of Document(s)

4.   Defendant is informed and believes that the aforementioned documents and exhibits constitute all of the process, pleadings, and orders on file in the State Court Action.

5.   Defendant makes no admission as to whether Centerra Services International, Inc. ("Centerra") and Constellis Integrated Risk Management Services, Inc. ("CIRMS") have been properly served with process in the State Court Action.   To the extent required, Centerra and CIRMS consent to this removal. Defendant is informed and believes that Veantea Burnside ("Burnside") has not been properly served with the Complaint or any other process or pleadings from the State Court Action, and the docket for the State Court Action does not reflect any such service.

6.   Defendant is informed and believes that there has been no service of process upon Does 1 through 99, which are fictitious defendants and therefore properly disregarded for the purpose of removal.  28 U.S.C. § 1441(a).

## TIMELINESS OF REMOVAL

7.   This action has not previously been removed to federal court.

8.   This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) which provides that such Notices "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based."  Defendant has filed this Notice of Removal within 30 days of November 5, 2021, the date on which Plaintiff served Defendant's agent for service of process with the Complaint. Accordingly, this action is being removed within 30 days of the first date upon

1  which Defendant was served with any paper giving it knowledge that the action was
2  indeed removable.

3  ## REMOVAL JURISDICTION – DIVERSITY

4      9.   This Court has jurisdiction over this action under 28 U.S.C. § 1332(a), 28
5  U.S.C. § 1441(b), and all other applicable bases for removal. As required by 28
6  U.S.C. § 1441, Defendant seeks to remove this case to the United States District
7  Court for the Central District of California which is the District Court embracing the
8  place where the State Court Action has been filed.

9      10. Burnside is a fraudulently-joined sham defendant and, therefore, is
10  disregarded for the purpose of this removal.  Accordingly, Burnside need not
11  consent to Defendant's removal of this action.  *See Emrich v. Touche Ross & Co.*,
12  846 F.2d 1190, 1193, n. 1 (9th Cir. 1988).  To the extent required, Centerra and
13  CIRMS consent to this removal.

14      11. This Court has jurisdiction over this action pursuant to 28 U.S.C. §
15  1332(a), and it is an action that may be removed to this Court by Defendant,
16  because: (1) there is complete diversity of citizenship between Plaintiff, on the one
17  hand, and Defendants Peraton, Centerra and CIRMS (collectively, the "Entity
18  Defendants"), on the other hand; and (2) the amount-in-controversy exceeds
19  $75,000.00, exclusive of interest and costs.

20      12. In accordance with 28 U.S.C. § 1446(d), Defendant will provide
21  contemporaneous written notice of this Notice of Removal to all adverse parties and
22  to the Clerk of the State Court.

23  ## CITIZENSHIP OF PARTIES

24      13. **Plaintiff's Citizenship.**  Defendant is informed and believes that, at all
25  times relevant to this action, Plaintiff has been a resident and citizen of the State of
26  California and the City of Pasadena.  *See* Exh. A (Complaint), Exh. 1 at Complaint
27  of Employment Discrimination, ¶ 3 ("Complainant Eldonna Gillespie, resides in the
28  City of Pasadena, State of California").  Further, Defendant is informed and believes

and thereon alleges that Plaintiff intends to indefinitely remain living continuously in California, and that her domicile is presently in California.  Accordingly, Plaintiff is a resident and citizen of the State of California for purposes of traditional diversity jurisdiction.  *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *see also, e.g.*, *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013) (person's continuing domicile in a state establishes citizenship "unless rebutted with sufficient evidence of change"); *Lew v. Moss*, 797 F.2d 747, 751-52 (9th Cir. 1986) (party domiciled in state of party's address); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).

14.  **Defendant Peraton Inc.'s Citizenship.**  As a corporation, Peraton is both a citizen of its state of incorporation and where it has its principal place of business.  *See* 28 U.S.C. § 1332(c)(1).  As shown on the Secretary of State's Business Entities Search website, Peraton is a corporation organized and existing under the laws of the State of Maryland with its corporate headquarters and principal place of business in Herndon, Virginia.  *See* URL at https://businesssearch.sos.ca.gov (using "Corporation Name" search for "Peraton").  At its corporate headquarters in Herndon, Virginia, Peraton's officers direct, control and coordinate its activities and the majority of its executive and administrative functions are performed there.  Thus, Peraton was and is a citizen of the State of Maryland and the Commonwealth of Virginia for the purpose of determining minimum diversity jurisdiction.  *See* 28 U.S.C. § 1332(d)(2).[1]

---

[1] If this Court's jurisdiction is challenged, either by Plaintiff or *sua sponte*, Defendant expressly reserves and does not waive its right to supplement and/or amend its removal submissions to present additional information regarding its citizenship to demonstrate the existence of the requisite diversity between the parties.

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**
4883-9404-6980.2

15. **Defendant Centerra Services International, Inc.'s Citizenship.** As a corporation, Centerra is both a citizen of its state of incorporation and where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). As shown on the Secretary of State's Business Entities Search website, Centerra is a corporation organized and existing under the laws of the State of Delaware with its corporate headquarters and principal place of business in Herndon, Virginia. *See* URL at https://businesssearch.sos.ca.gov (using "Corporation Name" search for "Centerra Services International"). Thus, Centerra was and is a citizen of the State of Delaware and the Commonwealth of Virginia for the purpose of determining minimum diversity jurisdiction. *See* 28 U.S.C. § 1332(d)(2).[2]

16. **Defendant Constellis Integrated Risk Management Services, Inc.'s Citizenship.** As a corporation, CIRMS is both a citizen of its state of incorporation and where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). As shown on the Secretary of State's Business Entities Search website, CIRMS is a corporation organized and existing under the laws of the State of Delaware with its corporate headquarters and principal place of business in Herndon, Virginia. *See* URL at https://businesssearch.sos.ca.gov (using "Corporation Name" search for "Constellis Integrated Risk Management Services"). Thus, CIRMS was and is a citizen of the State of Delaware and the Commonwealth of Virginia for the purpose of determining minimum diversity jurisdiction. *See* 28 U.S.C. § 1332(d)(2).[3]

---

[2] If this Court's jurisdiction is challenged, either by Plaintiff or *sua sponte*, Defendant expressly reserves and does not waive its right to supplement and/or amend its removal submissions to present additional information regarding Centerra's citizenship to demonstrate the existence of the requisite diversity between the parties.

[3] If this Court's jurisdiction is challenged, either by Plaintiff or *sua sponte*, Defendant expressly reserves and does not waive its right to supplement and/or amend its removal submissions to present additional information regarding CIRMS's citizenship to demonstrate the existence of the requisite diversity between the parties.

17. **Fraudulently–Joined, Sham Defendant Veantea Burnside.**  In an attempt to destroy diversity of citizenship, Plaintiff has fraudulently-joined Burnside as a sham defendant.  A fraudulently joined defendant will <u>not</u> defeat removal on diversity grounds.  *See Isaacs v. Broido*, 358 F. App'x 874, 876 (9th Cir. 2009) (noting fraudulently joined defendant "may be disregarded for the purpose of determining diversity jurisdiction") (citing *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds.").

18. Plaintiff alleges two of out of nine purported causes of action against Burnside, (1) asserting in her Fifth Cause of Action for harassment that she was "subjected to harassing conduct" in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(j), and (2) asserting in her Ninth Cause of Action for Retaliation in violation of Cal. Lab. Code § 1102.5 ("Section 1102.5") that Burnside subjected her to one or more adverse employment actions due to her "disclosure of information."  *See* Exh. A (Complaint), ¶¶ 87, 121, 122.  As discussed below, however, Burnside is fraudulently joined because the factual allegations in the Complaint pertaining to him are wholly inadequate under applicable law to state a claim for any cause of action alleged against him, and there is no possibility that Plaintiff can recover against Burnside on any of her claims.  *See, e.g., Martinez v. Schneider Logistics Transloading & Distrib., Inc.*, 2016 WL 6833911, at *3-4 (C.D. Cal. Nov. 18, 2016) (Bernal, J.) (denying motion to remand where allegations of disability harassment failed to state a claim for any cause of action against sham defendant).

### Fifth Cause of Action for Harassment

19. In support of her Fifth Cause of Action for harassment, Plaintiff alleges that she was "subjected to harassing conduct based upon one or more of the following protected statuses applicable to Plaintiff: (1) physical disability; (2) family

care or medical leave (CFRA); (3) sex/gender; (4) sexual harassment (hostile environment)." *See* Exh. A (Complaint), ¶ 87.  While individual defendants *may* be held liable for claims of harassment, Plaintiff's allegations against Burnside are insufficient as a matter of law to sustain any claim for harassment because: (1) Plaintiff's harassment claim is **time-barred** with regard to any conduct which occurred before December 31, 2018; (2) the alleged conduct by Burnside does not meet the legal definition of harassment; and (3) the alleged conduct by Burnside does not rise to the level of actionable harassment as a matter of law.

20.  Plaintiff attributes the following conduct to Burnside in the Complaint:[4]

> ➤ Plaintiff alleges that Burnside refused to provide her with a female ballistic vest which provides space for female breasts.  *See id.*, ¶ 2.
>
> ➤ In **2015**, Plaintiff alleges she and two other female security guards complained to Burnside about pain and discomfort in their breasts resulting from being forced to wear male ballistic vests that had no room for female breasts.  *See id.*, ¶ 25.
>
> ➤ In or around **March 2017**, Defendants provided separate locker rooms for men and women.  After separate locker rooms were provided, Plaintiff alleges Burnside informed the female employees that yoga pants or similar clothing was inappropriate to wear "on the way off shift."  She further alleges that Burnside would follow female officers, including Plaintiff, to see what their attire was and confront the female officers if they were wearing yoga pants or other "inappropriate" attire.  Plaintiff contends "female employees," including Plaintiff, witnessed Burnside standing outside their door when they were inside the locker room.  *See id.*, ¶ 26.
>
> ➤ In response to requests by female officers to purchase their own fitted ballistic vests, Plaintiff alleges Burnside told the female staff that Defendants did not want to buy vests because they would only be fitted to the individual female if the female officer left Peraton.  Burnside allegedly said, "fitted vests for women would be a waste of money." *See id.*, ¶ 27.

---

[4]  Without providing a specific time frame, Plaintiff also alleges, on *information and belief,* that Centerra conducted an inquiry based upon complaints that Burnside had been sexually harassing two of his female subordinates and again, on *information and belief,* that the Entity Defendants terminated him.  *See* Exh. A (Complaint), ¶ 46.  Plaintiff also alleges **unnamed** female employees complained to the Human Resources Manager for Constellis and CIRMS, and who she *believes* is a "Vice President of Constellis," about harassment and discrimination by Burnside. *See id.*, ¶¶ 30, 31.  There are no allegations that Plaintiff actually witnessed these incidents of alleged harassment by Burnside, such that it permeated *her* workplace environment.

➢ In *2016*, Burnside allegedly told Plaintiff he could not order her a female ballistic vest because she was "too top heavy." *See id.*, ¶ 28.

➢ Plaintiff contends Burnside attempted to provide a solution regarding discomfort caused by the ballistic vests and suggested the female guards take the vests home, fold the vests, and put them under a mattress in order to create a crease to create enough space for female breasts so they were not compressed.  Plaintiff followed this suggestion, but it did not work or help alleviate the pain. *See id.*, ¶ 29.

➢ In *February 2018*, Plaintiff alleges she reported a female job applicant's complaint of harassment by Burnside to "the Human Resources employee for Defendants CENTERRA and CONSTELLIS." *See id.*, ¶ 33.

Based upon these allegations *alone*, Plaintiff contends that she was "subjected to harassing conduct" by Burnside. *Id.*, ¶ 87.

21. **First**, Plaintiff's harassment claim is time-barred with regard to any conduct which occurred before December 31, 2018.  Thus, to the extent Plaintiff attempts to premise her harassment claim against Burnside based on allegations that she reported a complaint of harassment by a job applicant in February 2018, and that Burnside informed Plaintiff that yoga pants or similar clothing was inappropriate for the workplace, was witnessed standing outside the locker room, and told Plaintiff she was "too top heavy," those claims are *time-barred* because those alleged incidents allegedly occurred no later than *February 2018*, more than one year before Plaintiff filed her charge with the California Department of Fair Employment and Housing ("DFEH") on July 12, 2021.  To that point, former Gov't Code § 12960(d), which was in effect until December 31, 2019, set forth a one-year statute of limitations for filing claims with the DFEH, measured "from the date upon which the alleged unlawful practice … occurred."  Effective January 1, 2020, A.B. 9 extended that limitations period to three years, but expressly states that it does *not* revive claims, like Plaintiff's, that have *already lapsed* under previously applicable law.  Therefore, Plaintiff's harassment claim against Burnside is based *__solely__* upon allegations of conduct that occurred outside the applicable limitations period, and Plaintiff is barred as a matter of law from pursuing her claim based upon such

4883-9404-6980.2

conduct.  *Id.*

22.  **Second**, the alleged conduct attributed to Burnside in the Complaint fails to meet the legal definition of harassment.  Indeed, the only allegations are those that relate to Burnside's response to Plaintiff's requests to provide her with a female ballistic vest and comments about appropriate attire for the workplace.  *See* Exh. A (Complaint), ¶¶ 2, 25 26, 27, 28, 29, 33.  However, under FEHA, "harassment" is defined to include verbal epithets, derogatory comments or slurs based on a protected classification; physical harassment such as assault, unwelcome touching or impeding movement when directed at an individual based on a protected classification; visual forms of harassment such as posters, drawings, etc. that are infringing on the rights of a protected classification; and requests for sexual favors or unwanted advances which condition an employment benefit upon consent thereto.  *See* Cal. Code Regs. Title 2, § 7287.6(b)(1).  Based on this definition of "harassment," California courts have held that making a personnel decision is "fundamentally different from the type of conduct that constitutes harassment."  *See Janken v. GM Hughes Elecs.*, 46 Cal.App.4th 55, 64 (199).  As such, comments about work-related matters are not actionable as "harassment."  *See, e.g., Martinez*, 2016 WL 6833911, at *3 (finding disability harassment allegations such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, … the provision of support, … deciding who will be laid off, and the like, do not come within the meaning of harassment") (int. quot. marks omitted; emph. added).[5]

_____

[5] *See also, e.g., Haley v. Cohen & Steers Capital Mgmt., Inc.*, 871 F.Supp.2d 944, 957 (N.D. Cal. 2012) (holding that comments about plaintiff's performance and transfers, targeting her, threatening her with disciplinary action, preventing her from moving to east coast to be with her terminally ill father, removing territories from her, interfering with her medical leave, and causing her termination "do not constitute qualifying verbal, physical, or visual harassment with respect to plaintiff's gender or disability" under FEHA); *Velente-Hook v. Eastern Plumas Healthcase*, 38 F.Supp.2d 1084, 1103 (E.D. Cal. 2005) (requiring employee to return to work,

23. Rather, harassment "consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Janken*, 46 Cal.App.4th at 63 ("Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job."). As such, while "commonly necessary personnel actions," including hiring, firing, and work assignments might give rise to a discrimination claim, they "do not come within the meaning of harassment [because they] are actions of a type necessary to carry out the duties of business and personnel management." *Id.* at 64-65; *see Reno v. Baird*, 18 Cal.4th 640, 646-47 (1998). This distinction has been affirmed – and repeatedly *re-affirmed* – by California's state and federal courts. *See Roby v. McKesson Corp.*, 47 Cal.4th 686, 706 (2009) ("the exercise of personnel management authority properly delegated by an employer to a supervisory employee might result in discrimination, but not in harassment."); *Jacobson v. Schwarzenegger*, 357 F.Supp.2d 1198, 1219-20 (C.D. Cal. 2004) (McMahon, J.) (employer's request that plaintiff explain an absence or face work-related consequences, and the ultimate imposition of those consequences, were personnel management decisions that are "allegations of discriminatory discharge, not harassment.").

24. Under these well-established standards, the alleged conduct Plaintiff attributes to Burnside simply does not qualify as actionable harassment because each purported incident described in the Complaint constitutes an "action[] of a type necessary to carry out the duties of business and personnel management." *Janken*, 46 Cal.App.4th at 64-65. Plaintiff's Complaint is devoid of **any** allegation that Burnside made any disparaging or offensive comments to Plaintiff about her gender,

---

refusing to provide accommodations, withholding paycheck, calling employee "dangerous," forcing employee to resign were all conduct within the course and scope of personnel management actions and, therefore, not within the definition of harassment).

4883-9404-6980.2

alleged disability, or other protected status within the applicable limitations period. While the allegations of Burnside's purported conduct may relate to Plaintiff's **other** claims for which individual liability is **not** available (*i.e.*, failure to accommodate, failure to engage in the interactive process, and disability or gender discrimination), they certainly do not support a claim for harassment. *See, e.g., Cofer v. Parker-Hannifin Corp.*, 194 F.Supp.3d 1014, 1019-22 (C.D. Cal. 2016) (Carney, J.) (denying motion to remand and dismissing harassment claim against sham defendant where claim was based on "entirely personnel-related" conduct that "fit neatly within the discrimination framework," and noting that "[a]n employee may pursue a claim for discrimination against his employer solely based on such personnel-management-related conduct, but cannot pursue a claim for harassment").

25. As such, Plaintiff's harassment claim against Burnside is **without merit as a matter of law**.[6]

26. **<u>Third</u>**, Plaintiff's harassment claim against Burnside further fails because the Complaint's allegations do not rise to the level of actionable harassment. Plaintiff's harassment claim requires allegations that she was subjected to harassing conduct that was so **severe** or **pervasive** that it altered the terms and conditions of her employment and created an abusive working environment, and conduct that is

---

[6] *See, e.g., McBroom v. Wal-Mart Stores*, 2016 WL 3549606, at *3-5 (E.D. Cal. June 30, 2016) (denying motion to remand and granting motion to dismiss disability harassment claim against sham defendant where the sham defendant's allegedly harassing conduct of "comments about Plaintiff returning to work … cannot suffice to state a viable claim"); *Hurd v. Am. Income Life Ins.*, 2013 WL 5575073, at *1, 5 (C.D. Cal. Oct. 10, 2013) (Lew, J.) (supervisor found to be sham defendant where plaintiff alleged that she told the supervisor she was injured and, in response, the supervisor told her not to text her about medical leave and would call the plaintiff during dinner and "demand to know the status of her medical leave and paperwork."); *Gorom v. Old Dominion Freight Line Inc.*, 2013 WL 195377, at *4 (C.D. Cal. Jan. 17, 2013) (Wilson, J.) (individual defendants fraudulently joined because allegations consisted only of "supervisors' personnel decision" where the plaintiff alleged they declined plaintiff's request for a transfer, declined his request for an accommodation otherwise, suspended him, and required him to attend a meeting where they accused him of misconduct).

occasional, isolated, sporadic, or trivial does not meet this standard. *See, e.g., Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 610 (1989); *Etter v. Veriflo Corp.*, 67 Cal.App.4th 457, 465 (1998); *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal.4th 121, 129-31 (1999); *see also Mokler v. Cnty. of Orange*, 157 Cal.App.4th 121, 145 (2007) (harassment does not encompass conduct that is only "rude, inappropriate, [or] offensive"); *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal.App.4th 397, 409 (1994) (actionable violation of law requires showing that the workplace is "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment"). To that end, FEHA is not a general civility code for the workplace and is not designed to rid the workplace of vulgarity. *See Lyle v. Warner Bros. Television Prods.*, 38 Cal.4th 264, 295 (2006). It does not "outlaw … coarse and vulgar language or conduct that merely offends." *Id.* As one court has explained: "Not every unpleasant workplace is a hostile environment. The occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers would be neither pervasive nor offensive enough to be actionable. The workplace that is actionable is the one that is ***hellish***." *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003) (emph. added). Thus, FEHA protects only against conduct that is severe enough or sufficiently pervasive to alter the conditions of employment and create a hostile or abusive work environment, and is based upon a protected characteristic. *Lyle, supra*.

27. Here, each purported instance of "harassment" by Burnside is insufficient to show that Plaintiff's <u>workplace</u> was permeated with insult and ridicule that was sufficiently severe or pervasive to alter the conditions of employment and create an abusive or intolerable working environment. Assuming, *arguendo*, the truth of Plaintiff's allegations (which Defendant denies and disputes), these are ***not*** allegations of harassment.

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**

28.  Thus, even if the conduct attributed to Burnside in the Complaint met the legal definition of "harassment" under FEHA (which it does not), Plaintiff's harassment claim would still fail as against Burnside because the conduct was not severe or pervasive as a matter of law.  *See, e.g., Cofer*, 194 F.Supp.3d at 1018 (denying motion to remand where "[h]arassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee" (int. quot. omitted; emph. in orig.)).

## Ninth Cause of Action For Retaliation in Violation of Section 1102.5

29.  **First**, Plaintiff's whistleblower claim against Burnside is time-barred. The statute of limitations for a violation of Section 1102.5 is three years.  Cal. Code Civ. Proc. § 338(a) (three year limitation for "[a]n action upon a liability created by statute").  The statute of limitations for civil penalties under Section 1102.5(f) is one year.  *Id.* at § 340(a) (one year limitation for "[a]n action upon a statute for a penalty or forfeiture").  In connection with her claims, Plaintiff prays for "[c]ivil penalties as permitted by statute."  *See* Exh. A (Complaint), Prayer for Relief at 21:7.

30.  Plaintiff filed her Complaint on August 16, 2021.  Therefore, given that her whistleblower cause of action alleged against Burnside is subject to—***at most***— a three-year limitations period, any alleged act or conduct by him prior to August 16, 2018 is time-barred.  Plaintiff's allegations against Burnside ***all*** occurred **outside the statute of limitations period**, such that Plaintiff's purported whistleblower claim against Burnside is ***time-barred*** as a matter of law.  *See, e.g.*, Exh. A (Complaint), ¶¶ 2, 25 26, 27, 28, 29, 33.

31.  **Second**, Burnside is not susceptible to liability under Section 1102.5. Following an amendment in 2014, Section 1102.5 makes it unlawful for an "employer, or any person acting on behalf of the employer" to retaliate against an employee for disclosing information pertaining to a violation of or noncompliance with a statute or regulation.  *See* Cal. Lab. Code § 1102.5(b).  Since then, while the

13

4883-9404-6980.2

language of Section of 1102.5 is "broader than that contained in the [FEHA], [it] has consistently been construed by district courts in the Ninth Circuit to preclude individual liability by a manager or other non-employer." *Gonzales v. Trojan Battery Co., LLC*, 2020 WL 2857487, at *2 (C.D. Cal. June 2, 2020) (Wilson, J.). *See also, e.g., Dias v. Burberry Ltd.*, 2021 WL 2349730, at *5 (S.D. Cal. June 9, 2021) (denying motion to remand on grounds that it was "not possible" for plaintiff to hold individual defendant liable as individual supervisory employee for retaliation under Section 1102.5) (*citing CTC Glob. Corp. v. Huang*, 2018 WL 4849715, at *4 (C.D. Cal. Mar. 19, 2018) (Guilford, J.) ("Like the relevant statutes in *Reno* and *Jones*, it appears the California legislature intended simply to extend an employer's liability, rather than to create a new category (supervisors) of potential defendants."); *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F.Supp.3d 1020, 1030 (S.D. Cal. 2017) ("Based on *Reno* and *Jones*, the court concludes that if the California Supreme Court were ever to consider the issue, it would hold that there can be no individual liability under section 1102.5")).

32.     Plaintiff's inability to state a claim against Burnside as a matter of law makes his joinder as a party to this action fraudulent. *See Langevin v. Federal Express Corp.*, 2015 WL 1006367, at *13 (C.D. Cal. Mar. 6, 2015) (Morrow, J.); *see also, e.g., Meisel v. Allstate Indem. Co.*, 357 F.Supp.2d 1222, 1226 (E.D. Cal. 2005) (denying motion to remand and granting motion to dismiss where plaintiff failed to state a claim against fraudulently-joined defendant); *Ritchey*, 139 F.3d at 1318 (finding individual defendants were sham defendants for purposes of removal where plaintiff failed to state a cause of action against each of them).  Therefore, the joinder and citizenship of Burnside can and should be ignored, and this case may be removed to this Court based on the diversity of citizenship that existed and exists between Plaintiff and the Entity Defendants at the time Plaintiff's Complaint was filed and at the time of removal.

14

4883-9404-6980.2

1    33.   **Doe Defendants.**  Defendants "DOES 1 – 99" are fictitious Defendants

2    whose citizenship is disregarded for purposes of removal.  *See* 28 U.S.C. § 1441(a).

3    34.   As Plaintiff and the Entity Defendants have diverse citizenship, and

4    Burnside's citizenship should be disregarded because he is fraudulently-joined, there

5    is complete diversity of citizenship between the parties.

6    ## AMOUNT IN CONTROVERSY

7    35.   An action may be removed to and remain in federal court if the

8    defendant establishes, by a preponderance of the evidence, that the aggregate

9    amount-in-controversy exceeds the jurisdictional amount.  *See Abrego Abrego v.*

10   *Dow Chemical Co.,* 443 F.3d 676, 683 (9th Cir. 2006); *Bank of Calif. Nat'l Ass'n v.*

11   *Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972).[7]  To satisfy the

12   preponderance of the evidence test, a defendant must demonstrate that "it is more

13   likely than not" that the amount-in-controversy is satisfied.  *See Sanchez v.*

14   *Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  However, evidentiary

15   submissions are **not** required ***at the time of removal***.  *See Arias*, 936 F.3d at 925

16   (holding that defendant need not prove the amount in controversy in notice of

17   removal).  "Instead, evidence showing the amount in controversy is required '*only*

18   *when* the plaintiff contests, or the court questions, the defendant's allegation.'"  *Id.*

19   (emph. added).

20   36.   Indeed, when a defendant seeks to remove an action to federal court on

21   grounds of diversity jurisdiction, "the defendant's amount-in-controversy allegation

22   should be accepted [as true] when not contested by the plaintiff or questioned by the

23   court."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 547 U.S. 81, 135 S.Ct.

24   547, 553 (2014); *Arias*, 936 F.3d at 927 ("[A]ssumptions made part of the

---

26   [7] *See, e.g., Arias v. Residence Inn by Marriott*, 93 F.3d 920, 924 (9th Cir.
27   2019) ("A district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied.").

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**
4883-9404-6980.2

defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'"). At the time of removal, the removing defendant's burden of establishing that the amount in controversy exceeds $75,000 is not daunting and does not require the defendant to do extensive research or prove the plaintiff's damages. *See, e.g., Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *16 (C.D. Cal. May 9, 2011) (Matz, J.). Thus, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S.Ct. at 554. Furthermore, it is an abuse of discretion for a district court to *sua sponte* remand a case back to state court without first giving the removing defendant an opportunity to show that the jurisdictional requirements are met. *Academy of Country Music v. Continental Casualty Co.*, 991 F.3d 1059 (9th Cir. 2021).

37.     A plaintiff's complaint is a court's "first source of reference in determining the amount in controversy." *LaCrosse v. Knight Truck & Trailer Sales, LLC*, 775 F.3d 1200, 1203 (9th Cir. 2015) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). In determining whether the amount-in-controversy exceeds $75,000, the court must presume that the plaintiff will prevail on each and every claim asserted in her complaint. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002) (Morrow, J.). The ultimate inquiry asks what amount is put 'in controversy" by the operative complaint—not what a court or jury might later determine to be the actual amount of damages, if any. *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (defendants "are not stipulating to damages suffered" in a removal petition, "but only estimating the damages that are in controversy," because "jurisdiction must be analyzed on the basis of pleadings filed at the time of

4883-9404-6980.2

1   removal").[8]   The court may also look beyond the complaint to determine whether
2   the amount-in-controversy is met, if necessary.  *See Abrego Abrego*, 443 F.3d at
3   690.

4       38. The amount in controversy may include general and special
5   compensatory damages.  *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416
6   (9th Cir. 2018); *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1031 (N.D. Cal.
7   2002).   Further, when attorneys' fees are authorized by statute, they are
8   appropriately part of the calculation of the "amount in controversy" for purposes of
9   removal.  *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 789, 794 (9th
10  Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *see also*
11  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("[W]here an
12  underlying statute authorizes an award of attorneys' fees, either with mandatory or
13  discretionary language, such fees may be included in the amount in controversy.").
14  Moreover, "a court ***must*** include **future** attorneys' fees recoverable by statute or
15  contract when assessing whether the amount-in-controversy requirement is met."
16  *Fritsch*, 899 F.3d at 794 (emph. added); *see also Chavez*, 888 F.3d at 414-15
17  ("[T]he amount in controversy is determined by the complaint operative at the time
18  of removal and encompasses ***all*** relief a court may grant on that complaint if the
19  plaintiff is victorious." (emph. added)).   The amount-in-controversy may also
20  include punitive damages and emotional distress.  *See Gibson v. Chrysler Corp.*, 261
21  F.3d 927, 945 (9th Cir. 2001); *Kroske*, 432 F.3d at 980.

22

23
―――――――――――――――

24      [8] *Scherer v. Equitable Life Assurance Soc'y of the United States*, 347 F.3d
    394, 399 (2d Cir. 2003) (the "'amount in controversy' … for jurisdictional purposes,
25  [is] the sum put in controversy by the plaintiff's complaint"); *see also Wilder v.*
    *Bank of Am.*, 2014 WL 6896116, at *4 (C.D. Cal. Dec. 5, 2014) (Morrow, J.)
26  (determining amount in controversy requires that court assume that the allegations
    of the complaint are true and that a jury will return a verdict for the plaintiff on all
27  claims made in the complaint because the ultimate inquiry is what amount is put "in
    controversy" by the complaint, not what a defendant will actually owe).

28

1

### Plaintiff's Complaint

2    39.    Here, Plaintiff asserts in her Complaint nine causes of action for: (1)

3  gender discrimination in violation of FEHA; (2) disability discrimination in

4  violation of FEHA; (3) failure to engage in the interactive process in violation of

5  FEHA; (4) failure to provide reasonable accommodation in violation of FEHA; (5)

6  work environment harassment in violation of FEHA; (6) retaliation in violation of

7  FEHA; (7) failure to prevent discrimination, harassment, and retaliation in violation

8  of FEHA; (8) violation of the California Family Rights Act, Cal. Gov't Code §

9  12945.1; and (9) whistleblower retaliation in violation of Section 1102.5.   In

10  connection with her claims, Plaintiff seeks recovery for "[c]ompensatory damages in

11  an amount according to proof at time of trial," attorneys' fees and costs "pursuant to

12  all applicable statutes or legal principles," "[c]ivil penalties as permitted by statute,"

13  punitive or exemplary damages, and prejudgment interest. *See* Exh. A (Complaint),

14  Prayer for Relief at 21:3-12.

15    40.    Considered together, the compensatory damages, punitive damages and

16  statutory attorneys' fees sought by Plaintiff, assuming for purposes of removal only

17  that Plaintiff will prevail on her claims in the Complaint, establish by a

18  preponderance of evidence that the amount-in-controversy far exceeds $75,000.[9]

19  Notably, the $75,000 amount-in-controversy threshold is met even without the

20  inclusion of punitive damages, emotional distress damages, lost wages through trial,

21  or even statutory attorneys' fees—all of which Plaintiff is seeking and which

22

23    _____

24    [9] The amount in controversy calculations, as set forth below, are based on an
assumption for purposes of removal only that the allegations of Plaintiff's

25  Complaint regarding her theories of liability are true, but *without any type of express
or implied admission* that the conduct alleged in the Complaint occurred, that
Plaintiff has suffered any damages, and that such liability in fact exists. *See, e.g.,*

26  *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005)
("Removability under § 1446(b) is determined through examination of the four

27  corners of the applicable pleadings, not through subjective knowledge or a duty to
make further inquiry.").

28

binding precedent dictates should be considered as part of the amount-in-controversy for purposes of this removal.

### **Compensatory Damages**

41.     In her Complaint, Plaintiff avers that she had a physical condition that limited a major life activity.  *See* Exh. A (Complaint), ¶ 63.  She contends that she "was able to perform the essential job duties of her current position, either with or without reasonable accommodation for her condition." *Id.*, ¶ 64.  Plaintiff contends she requested "reasonable accommodation for her physical condition" and that she was harmed by the Entity Defendants' "failure to make reasonable accommodation." *Id.*, ¶¶ 74, 83.  The Complaint expressly seeks "[c]ompensatory damages in an amount according to proof ***at time of trial***." *Id.*, Prayer for Relief at 21:3 (emph. added).

42.     Notably, the amount in controversy is not limited to damages incurred prior to removal.  Instead, as the Ninth Circuit held in *Chavez v. JPMorgan Chase & Co.*, it includes lost wages incurred after the time of removal where, as here, they are expressly prayed for as relief in the operative pleading.  *See Chavez*, 888 F.3d at 417-18 (holding that lost wages incurred after removal were appropriately included in the amount in controversy since they were claimed at the time the case was removed by defendant).  Indeed, in determining the amount in controversy, it is appropriate to consider the amount of lost wages through the time of trial.  *See, e.g., Tiffany v. O'Reilly Auto Stores, Inc.*, 2013 WL 4894307, at *3-4 (E.D. Cal. Sept. 11, 2013) (denying remand in employment discrimination action and accepting calculation of 108 weeks of post-removal lost wages through date of trial as appropriately included in amount-in-controversy calculation).

43.     Plaintiff alleges she was formerly employed as a Captain until she was "involuntarily terminated" on January 15, 2020.  *See* Exh. A (Complaint), ¶¶ 32, 41.  Plaintiff alleges she "sought to return to work with reasonable accommodations" and the Entity Defendants refused to provide her with any of those reasonable

accommodations, and instead terminated her employment. *See id.*, ¶¶ 48, 49.[10] Defendant is informed and believes that, at the time of her termination, Plaintiff was employed on a full-time basis at an hourly rate of pay of $26.91 per hour, or approximately $1,076.40 per week based on a 40-hour workweek.[11]

44. Accordingly, to the extent that Plaintiff prevails on any claim for lost wages resulting from her termination (January 15, 2020) through the date of removal (December 3, 2021) *only*, the lost wages amount in controversy is conservatively estimated to be not less than $105,487.20 [3,920 hours (approximately 98 weeks [January 15, 2020 – December 3, 2021] x approximately 40 hours/week) x $26.91/hour].

45. However, Plaintiff seeks to recover lost earnings well past the date of removal. *See* Exh. A (Complaint), Prayer for Relief at 21:3. Defendant conservatively estimates that this matter will conclude by the end of December 2022, or within 12 months of its removal from the State Court.[12] Calculating lost wages *through trial* yields an *additional* amount in controversy of not less than $55,972.80 [2,080 hours (approximately 52 weeks [December 4, 2021 – December 3, 2022] x approximately 40 hours per workweek) x $26.91/hour]. *See, e.g.,*

---

[10] In her Complaint, Plaintiff alleges she was terminated on **two** different dates. *Compare* Exh. A (Complaint), ¶ 49 (alleging Defendants "terminated Plaintiff on January 6, 2020") *with id.*, ¶ 41 (alleging Defendants "involuntarily terminated the Plaintiff's employment" on or around January 15, 2020). Defendant conservatively uses the later date for purposes of this removal.

[11] If challenged, Defendant expressly reserves and does not waive its right to supplement and/or amend its removal submission to rely on other, higher, reasonable assumptions and/or estimates in calculating the amount in controversy, including, without limitation, by including any lost benefits in calculating the amount in controversy—which would increase the amount in controversy.

[12] This 12-month estimate is significantly conservative in light of the 2021 U.S. Courts Caseload Statistics, which show that the median time interval for disposition of civil cases in this District, from filing through trial, is approximately **20.2 months** (or approximately 87 weeks). *See* Table C-5, downloadable at URL https://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2021/06/30 (June 30, 2021).

*Chavez*, 888 F.3d at 417 ("If a plaintiff claims at the time of removal that her termination caused her to lose future wages, and if the law entitles her to recoup those future wages if she prevails, then there is no question that future wages are 'at stake' in the litigation, whatever the likelihood that she will actually recover them."). Accordingly, Defendant's lost wages calculation is actually *under-calculated* given the relief sought in the Complaint because it only takes into account Plaintiff's alleged lost wages from the date of her termination on January 15, 2020 through the date of removal, excluding any future lost wages beyond removal and through trial—which are properly included in the amount in controversy.

46. Consequently, without including future lost wages that Plaintiff also seeks in this action (which Defendant reserves the right to include if its amount-in-controversy calculations are challenged), the amount in controversy on Plaintiff's prayer for **past lost wages** from January 2020 **only** to the time of removal is **$105,487.20**.

## Punitive Damages

47. Plaintiff also seeks punitive and/or exemplary damages in connection with her claims. *See, e.g.*, Exh. A (Complaint), ¶¶ 59, 69, 79, 84, 94, 101, 108, 116, 125 & Prayer for Relief at 21:10-11. The Ninth Circuit has held that punitive damages should be considered by a district court when determining the amount-in-controversy where they are recoverable as a matter of law. *See Gibson*, 261 F.3d at 945.

48. "In order to establish the amount…of punitive damages in controversy, a defendant may introduce evidence of jury verdicts in cases involving analogous facts." *Rivera v. Costco Wholesale Corp.*, 2008 WL 2740399, at *4 (N.D. Cal. July 11, 2008). California district courts routinely find that "the potential for large punitive damage awards in employment discrimination cases" satisfies the amount in controversy without even considering other damages. *See Simmons*, 209

21

4883-9404-6980.2

F.Supp.2d at 1033; *Chambers v. Penske Truck Leasing Corp.*, 2011 WL 1459155, at *4 (E.D. Cal. Apr. 15, 2011) (denying remand in FEHA action and finding that amount in controversy was satisfied because "punitive damages in employment matters may be substantial"); *Haase v. Aerodynamics, Inc.*, 2009 WL 3368516, at *4 (E.D. Cal. Oct. 19, 2009) (acknowledging million-dollar punitive damages awards and denying remand in FEHA action, noting that "even a minimum award of punitive damages would satisfy the jurisdictional requirement").[13]   Furthermore, punitive damages verdicts on claims similar to Plaintiff's claims here typically far exceed the $75,000 jurisdictional minimum on their own. *See, e.g., Lopez v. Bimbo Bakeries USA, Inc.*, 2009 WL 1090375, at *11-18 (Cal. Ct. App. Apr. 23, 2009) (unpublished) (affirming ***$2 million*** punitive damages award on plaintiff's FEHA discrimination claims).

49.   In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 403, 425 (2003), the United States Supreme Court held that the longstanding historical practice of setting punitive damages at two, three, or four times the size of compensatory damages, while "not binding," is "instructive," and that "[s]ingle-digit multipliers are more likely to comport with due process."  Here, as shown above, Plaintiff's ostensible compensatory damages as of the time of removal is at least $105,487.20.   Utilizing the ***smallest*** ratio of 2:1 that *State Farm* found to be "instructive" (but without conceding its ultimate propriety for use in this case), and basing any potential exemplary damages award ***only*** on the past lost wages damages at issue in this action, the potential punitive damages award in this action is approximately $210,974.40 ([$105,487.20 lost wages] x 2) (notwithstanding that

---

[13] *See also* California Jury Instruction (CACI) 2500 (2018), *quoting Weeks v. Baker & McKenzie*, 63 Cal.App.4th 1128, 1147-48 (1998) (noting that it is "'settled that California's punitive damages statute, Civil Code section 3294, applies to actions brought under the FEHA'").

1   Defendant denies that Plaintiff can ultimately establish the necessary conditions for

2   obtaining punitive or exemplary damages).

3   **Statutory Attorneys' Fees**

4       50.    Plaintiff's Complaint also seeks "[a]ttorney's fees" pursuant to "all

5   applicable statutes or legal principles, including, but not limited to, the Fair

6   Employment and Housing Act, Lab. Code § 1102.5, and/or Civ. Code 1021.5."

7   Exh. A (Complaint) at 21:4-6. FEHA provides for the recovery of statutory

8   attorneys' fees by the prevailing party. *See, e.g.*, Cal. Gov't Code § 12965(b). The

9   California Labor Code similarly permits an award of attorneys' fees to the

10   prevailing party in connection with certain claims. *See, e.g.*, Cal. Lab. Code §

11   1102.5(j).

12       51.    In the Ninth Circuit, when attorneys' fees are authorized by statute,

13   they are appropriately part of the calculation of the "amount in controversy" for

14   purposes of removal. *See Arias*, 936 F.3d at 928 (finding district court erred in

15   excluding prospective attorneys' fees from the amount in controversy). Indeed, "a

16   court **must** include **future** attorneys' fees recoverable by statute or contract when

17   assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899

18   F.3d at 794 (emph. added); *see Arias*, 936 F.3d at 927-28 (noting that there is *no*

19   split in authority as to whether attorneys' fees should be considered in the amount in

20   controversy and reaffirming *Fritsch*'s holding that "a court must include future

21   attorneys' fees recoverable by statute or contract when assessing whether the

22   amount-in-controversy requirement is met").

23       52.    The Court's own knowledge and experience in ruling on prevailing

24   plaintiffs' motions for attorneys' fees in discrimination and wrongful termination

25   cases, like this action, should indicate that it is "more likely than not" that Plaintiff

26   will be seeking an attorneys' fees award of *at least* **$75,000.00** if this case is

27

28

**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT**
4883-9404-6980.2

litigated to judgment in a jury trial.[14]   *See, e.g., Wysinger v. Auto Club*, 157 Cal.App.4th 413, 430-432 (2007) (affirming $980,000 attorneys' fees award in FEHA discrimination action); *Lopez*, 2009 WL 1090375, at *18-21 (affirming trial court's award of $1 million in attorneys' fees on FEHA discrimination claims); *see also, e.g., Crawford v. DirecTV, Inc.*, 2010 WL 5383296 (Cal. Super. Ct. Sept. 29, 2010) (awarding approximately $160,000 in attorneys' fees in FEHA disability/wrongful termination action where the plaintiff's recovered damages were only $175,000); *Harris v. City of Santa Monica*, 2007 WL 4303742 (Cal. Super. Ct., Feb. 27, 2007) (awarding $401,188 in attorneys' fees where plaintiff prevailed in wrongful termination action); *Campos v. Valley Family Health Ctr. Med. Grp., Inc.*, 2007 WL 3275361 (Cal. Super. Ct. May 9, 2007) (awarding $117,165 in attorneys' fees to prevailing plaintiff in wrongful termination action).

53.   Indeed, Defendant reasonably estimates at this juncture that its own attorneys' fees to defend this action through a jury trial and post-trial motions will be well *over* **$75,000** based on its counsel's own past litigation experience.

## Summary of Amount in Controversy

54.   Based on the foregoing, the reasonably-calculated amount in controversy on Plaintiff's claims in this action based on the information in the Complaint and presently known to Defendant *only through removal and without considering any going forward damages*, is as follows:

---

[14] Given the other damages at issue in this action, even a minimal award of attorneys' fees would cause the amount in controversy to exceed the jurisdictional minimum in this action. *See, e.g., Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015) (Birotte, J.) (using a "reasonable rate for employment cases" at $300 per hour and "an appropriate and conservative estimate" of 100 hours to find that attorneys' fees in that case could "reasonably be expected to equal at least $30,000.").

| __DAMAGES CLAIMED__ | __CALCULATION__ | __TOTAL__ |
|---|---|---|
| Lost Wages<br><br>(through the date of removal and exclusive of employment benefits or interest) | Approximately 98 weeks of lost wages from January 2020 through date of removal | $105,487.20 |
| Punitive Damages | 2:1 compensatory damages ratio per *State Farm*, 538 U.S. 403 | $210,974.40 |
| Statutory Attorneys' Fees | Conservatively estimated attorneys' fees as of date of trial | $75,000 |
| __TOTAL__ | | __$391,461.60__ |

55. Accordingly, the conservatively estimated amount in controversy in this action exceeds the $75,000 jurisdictional threshold without considering (1) Plaintiff's prayer for lost wages beyond the date of removal, or (2) emotional distress damages that Plaintiff is pursuing in this action.[15]

56. Defendant expressly reserves the right to amend or supplement this Notice of Removal and the evidence in support thereof to the fullest extent permitted by applicable law to provide additional supporting evidence or include any additional sums sought in the Complaint, but not included herein, should any aspect of this removal and/or the information set forth herein be challenged. *See, e.g., Arias*, 936 F.3d at 925-29 (defendant must be provided "a fair opportunity to submit proof" where amount in controversy contested); *Janis*, 472 F. App'x at 534-35 (holding court erred in refusing to consider evidence of amount in controversy submitted after removal in response to a remand motion).

---

[15] Plaintiff contends she has been "harmed" and prays for compensatory damages in connection with her claims. *See, e.g.*, Exh. A (Complaint), ¶¶ 57, 67, 77, 83, 92, 99, 106, 114, 123 & Prayer for Relief at 21:3. Emotional distress damages are considered in calculating the amount in controversy. *See Simmons*, 209 F.Supp.2d at 1031. Emotional distress damages awards in employment actions frequently exceed the $75,000 amount in controversy by themselves. *See, e.g., Lemke v. BCI Coca-Cola of Los Angeles*, 2004 Jury Verdicts LEXIS 46138 (awarding $135,000 in emotional distress damages in wrongful termination action).

57.     Because there is diversity of citizenship between Plaintiff and the Entity Defendants, and because Plaintiff seeks damages in excess of the $75,000 jurisdictional threshold, Defendant may remove this action pursuant to 28 U.S.C. §§ 1332 and 1441(b).

## VENUE

58.     This is a civil action originally filed in State Court in San Bernardino County, California.  Defendant is informed and believes the events allegedly giving rise to this action occurred within this judicial district.  Venue lies in this Court because the State Court Action is pending in this district and division.  *See* 28 U.S.C. § 1441(a).

59.     Nothing in this Removal Notice is intended or should be construed as any type of express or implied admission by Defendant of any fact, or the validity or merits of any of Plaintiff's claims, causes of action, and allegations, or of any liability for the same, all of which are hereby expressly denied, or as any type of express or implied waiver or limitation of any of Defendant's rights, claims, remedies, and defenses in connection with this action, all of which are hereby fully and expressly reserved.

WHEREFORE, Defendant respectfully removes to this District Court the above-captioned action now pending in the State Court.

DATED:  December 3, 2021          **BAKER & HOSTETLER LLP**


By: _____
        /s/ Daniel F. Lula
        Daniel F. Lula, Esq.
        Kerri H. Sakaue, Esq.

        Attorneys for Defendant
        PERATON INC.

26

NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

4883-9404-6980.2

1
## PROOF OF SERVICE

2
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3
     I am employed in the County of Los Angeles, State of California.  I am over the age of
eighteen years and not a party to the within action; my business address is 11601 Wilshire Blvd.,
4
Suite 1400, Los Angeles, California 90025-0509.

5
     On December 3, 2021, I served the following document(s) described as **NOTICE OF
REMOVAL OF CIVIL ACTION FROM STATE COURT** on the interested parties in this
6
action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

7
Alan Romero                                     Attorneys for Plaintiff
Robert S. Myong                            **ELDONNA GILLESPIE**
8
**ROMERO LAW, APC**
80 S. Lake Avenue, Suite 880
9
Pasadena, CA 91101-2672

10

11
Annette Morasch
**LAW OFFICE OF ANNETTE MORASCH, APC**
5701 W. Slauson Avenue, Suite 210
12
Culver City, CA 90230-3426

13

14
☒     **BY MAIL:**  I am "readily familiar" with the firm's practice of collection and processing
correspondence for mailing with the United States Postal Service.  Under that practice, it
15
     would be deposited with the United States Postal Service that same day in the ordinary
course of business.  Such envelope(s) were placed for collection and mailing with postage
16
     thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business
practices.  (C.C.P. § 1013 (a) and 1013a(3))
17

18
☐     **BY OVERNIGHT DELIVERY:**  I deposited such document(s) in a box or other facility
regularly maintained by the overnight service carrier, or delivered such document(s) to a
19
     courier or driver authorized by the overnight service carrier to receive documents, in an
envelope or package designated by the overnight service carrier with delivery fees paid or
20
     provided for, addressed to the person(s) served hereunder.  (C.C.P. § 1013(d)(e))

21
     I declare under penalty of perjury under the laws of the State of California that the foregoing
is true and correct.

22

23
     Executed on December 3, 2021, at Los Angeles, CA.

24
*Vaneta D. Birtha*
_____
25
Vaneta D. Birtha

26

27

28